USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/10/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAGE DINING SERVICES, INC.,

                      Plaintiff,

-against-

ASH RESTAURANT GROUP, INC.,

                      Defendant.

No. 17-cv-09738 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Sage Dining Services, Inc. ("Plaintiff") brings this action against Defendant Ash Restaurant Group, Inc. ("Defendant") alleging trademark infringement and unfair competition under the Lanham Act. *See* Am. Compl. ¶¶ 52-75, ECF No. 17.

Defendant has moved to dismiss the Amended Complaint pursuant to the doctrine of judicial estoppel and Federal Rule of Civil Procedure 12(b)(6). *See* Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem. Supp.") at 1-3, ECF No. 20-2. Upon the conclusions set forth below, Defendant's motion is DENIED.

**BACKGROUND**

The following facts are drawn from the allegations in the Amended Complaint, which are assumed true for the purpose of this motion to dismiss, as well as documents filed in certain of Plaintiff's proceedings before the United States Patent and Trademark Office ("USPTO"). *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[O]n a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.") (internal quotation marks and citation omitted).

Since at least 1990, Plaintiff has been a provider of dining and catering services to private and public institutions, including schools, universities, and colleges. Am. Compl. ¶¶ 7-9, ECF No. 17. Plaintiff currently has more than 3,200 employees and serves individuals at over 250 locations in at least 37 states, including ten locations in New York. *Id.* ¶¶ 8, 11. In total, Plaintiff provides more than 150,000 meals per day to students, faculty, employees, parents, and others who dine on its customer's campuses. *Id.* ¶¶ 8-9.

In addition to its catering and dining services, since at least 2013, Plaintiff has also been a provider of software and online publications which offer nutritional information. *Id.* ¶ 7. Plaintiff's online nutritional tool has over 18,000 users. *Id.* ¶ 14.

Plaintiff is the exclusive owner of the following United States Federal Trademark Registrations and Applications:

1. SAGE (U.S. Registration No. 2,712,358) in connection with "dining services,

namely catering and contract food services offered on-site to public and private businesses and institutions" (the "Sage Mark");

2. SAGE DINING SERVICES (U.S. Registration No. 2,733,649) in connection with "dining services, namely catering and contract food services offered on-site to public and private businesses and institutions";

3. SAGEWARE (U.S. Registration No. 4,019,621) in connection with "on-line, non-downloadable software, namely, financial and statistical reporting software used by or on behalf of public and private businesses and institutions to manage and report account information relating to their receipt of foods services and dining services";

4. SAGE DINING SERVICES (and Design) (U.S. Registration No. 2,467,001) in connection with "dining services, namely catering and contract food services offered on-site to public and private businesses and institutions";

5. SAGE SPOTLIGHT PROGRAM (U.S. Registration No. 3,720,880) in connection with "nutrition services and dining services, namely catering offered on-site to public and private businesses and institutions" and "nutrition services and dining services, namely, catering offered on-site to public and private businesses and institutions";

6. SAGE SIGNATURE SERVICE (U.S. Registration No. 3,395,751) in connection with "dining services, namely catering and contract food services offered on-site to public and private businesses and institutions";

7. SAGE (U.S. Registration No. 5,298,784) in connection with "providing a website featuring a non-downloadable application for users to access menus, nutritional information and ingredient lists";

8. AT HOME WITH SAGE (U.S. Serial No. 86/711,761) in connection with "printed

publications in the fields of nutrition and wellness" and "downloadable electronic publications in the fields of nutrition and wellness";

9. SAGE (U.S. Serial No. 86/711,775) in connection with "printed publications in the fields of nutrition and wellness" and "downloadable electronic publications in fields of nutrition and wellness";

10. SIMPLY SAGE (U.S. Serial No. 86/914,946) in connection with "prepared food and frozen prepared food, namely, breaded chicken, meat, minimally processed potatoes and veggie burger patties; flash-frozen local produce, namely, minimally processed frozen fruits and vegetables", "prepared food and frozen prepared food, namely, sauces, prebaked frozen cookies, pancakes, muffins, biscuit sandwiches, baking mixes, breakfast pastries and salad dressings in liquid and dry form; and beverages, namely, fruit, spice and herb infused teas", "beverages, namely, fruit, spice and herb infused waters", and "food preparation services, namely, catering and contract food service offered to public and private businesses and institutions";

11. EST. 2016 SIMPLY SAGE LUTHERVILLE and Design (U.S. Serial No. 86/931,599) in connection with "prepared food and frozen prepared food, namely, breaded chicken, meat, minimally processed potatoes and veggie burger patties; flash-frozen local produce, namely, minimally processed frozen fruits and vegetables", "prepared food and frozen prepared food, namely, sauces, pre-baked frozen cookies, pancakes, muffins, biscuit sandwiches, baking mixes, breakfast pastries and salad dressings in liquid and dry form; and beverages, namely, fruit, spice and herb infused teas", "beverages, namely, fruit, spice and herb infused waters", and "food preparation services, namely, catering and contract food service offered to public and private businesses and institutions";

12. SAGE (U.S. Serial No. 87/181,407) in connection with "downloadable mobile application for users to view menus, nutritional information, ingredient lists; downloadable mobile application for users to view and manage student meal plan accounts; downloadable mobile application for users to purchase and pay for food";

13. SAGE (U.S. Serial No. 87/500,019) in connection with "educational services, namely, conducting workshops, seminars, and classes in the fields of food, agriculture food science, food systems, nutrition, wellness, and the social science facets of food including historical, geographical, and cultural aspects";

14. SAGE DINING SERVICES (U.S. Serial No. 87/499,962) in connection with "educational services, namely, conducting workshops, seminars, and classes in the fields of food, agriculture food science, food systems, nutrition, wellness, and the social science facets of food including historical, geographical, and cultural aspects"; and

15. TOUCH OF SAGE (U.S. Serial No. 87/216,399) in connection with "downloadable mobile application for users to view menus, nutritional information, ingredient lists and allergen information; downloadable mobile application for users to view and manage student meal plan accounts; downloadable mobile application for users to specify food recommendations, purchase and pay for food." *Id.* ¶¶ 15-16 & Ex. 2.

Since August 1, 1990, Plaintiff has continuously used the Sage Mark to identify its goods and services, including its dining and catering services. *Id.* ¶ 12. In addition, on April 21, 1997, Plaintiff, or agents or representatives acting on Plaintiff's behalf, registered the domain name www.sagedining.com in Plaintiff's name. *Id.* ¶ 17 & Ex. 3.

In the USPTO proceedings for the Simply Sage and Est. 2016 Simply Sage Lutherville

5

trademarks, Plaintiff argued that marks containing the word "sage" can "co-exist" with each other and that "consumers are used to encountering various SAGE and SAGE-formative marks for food-related goods and services and differentiating between these marks on the basis of minor differences in appearance, sound, connotation, and commercial impression." *See In Re Application of SAGE Dining Services, Inc.*, Serial No. 86914946, Response to Office Action (Feb. 22, 2016) at 8-9; *In Re Application of SAGE Dining Services, Inc.*, Serial No. 86931599, Response to Office Action (Mar. 7, 2016) at 9. Plaintiff took this position in response to the USPTO's initial findings that these two marks were likely to cause confusion with (a) the mark SAGE in connection with fresh apples and pears, owned by Sage Fruit Company, LLC; and (b) the mark SAGE in connection with liqueurs, owned by William Grant & Sons Irish Brands Limited. *See In Re Application of SAGE Dining Services, Inc.*, Serial No. 86914946, Response to Office Action (Feb. 22, 2016) at 1; *In Re Application of SAGE Dining Services, Inc.*, Serial No. 86931599, Response to Office Action (Mar. 7, 2016) at 1. Plaintiff successfully convinced the USPTO to reverse course, as the USPTO permitted both applications to proceed to publication. *See In Re Application of SAGE Dining Services, Inc.*, Serial No. 86914946, Notice of Publication (Feb. 1, 2017); *In Re Application of SAGE Dining Services, Inc.*, Serial No. 86931599, Notice of Publication (Feb. 1, 2017).

Defendant is a New York corporation that offers café and restaurant services. *Id.* ¶¶ 21-22 & Ex. 4. On or about January 26, 2017, without Plaintiff's consent, Defendant adopted and began to promote the name Sage Café/Market/More and/or Sage for a dining facility that it owns in New Rochelle, New York. *Id.* ¶¶ 2, 23-25; *id.* Ex. 6. On March 6, 2017, Defendant filed an intent-to-use application for Sage Café/Market/More, U.S. Serial No. 87/360,103 in connection with "Delicatessen services; café and restaurant services" (the "Ash Mark"). *Id.* ¶ 26.

6

Defendant's dining facility is located within a residence hall of Iona College in New Rochelle. *Id.* ¶¶ 25, 44. The residence hall bears the Iona College insignia and seal. *Id.* ¶ 44. Defendant's restaurant accepts payment through its off-campus meal plan, *id.* ¶ 48, and Iona College has specifically advertised its affiliation with Defendant, *id.* ¶¶ 46-48.

Defendant uses the Sage Café/Market/More name to refer to its services, including on the restaurant's storefront. *Id.* ¶¶ 28-30; *id.* Ex. 6. However, Defendant also frequently refers to its restaurant as "Sage Café" or "Sage," with little or no reference to any other portion of the applied-for Ash Mark. *Id.* ¶¶ 31, 33-42. For example, Defendant has registered the domain name www.sagecmm.com, where "sage" is spelled out in its entirety and the remaining components of the Ash Mark are reduced to their first letter only. *Id.* ¶ 34. Defendant's website reads, "Sage is a new restaurant and market," *id.* ¶ 38, and invites consumers to click on a link to see the "menus and all the products [they] can enjoy . . . at Sage," *id.* ¶ 37; *see also* ¶¶ 35-36 (providing more examples of Defendant calling its restaurant "Sage"). Consumers and the media likewise refer to Defendant's restaurant merely as "Sage." *See id.* ¶ 40 (citing a CBS New York article that contains a quote from the "owner of Sage"); ¶ 41 (alleging that "every single reference by a consumer on the website www.opentable.com refers to [the restaurant] as "Sage").

Plaintiff alleges that Defendant uses or intends to use the names or trademarks Sage Café/Market/More and Sage in connection with offering goods and services which are identical or similar to those offered under Plaintiff's Sage Mark, *id.* ¶ 32, and also uses or intends to use channels of advertising to promote goods and services under those names and trademarks which are identical or similar to the channels of advertising Plaintiff uses to promote the goods and

7

services offered under Plaintiff's Sage Mark, *id.* ¶ 42.[1] According to Plaintiff, these actions are likely to cause actual confusion on the part of consumers, particularly in light of Defendant's affiliation with Iona College. *Id.* ¶ 44. Plaintiff further claims that individuals have congratulated it on obtaining a contract with Iona College. *Id.* ¶ 49.

In early 2017, prior to Defendant's expenditure of money advertising the Sage name, Plaintiff contacted Defendant to relay its objection to Defendant's proposed establishment. *Id.* ¶ 29. On August 7, 2017, Plaintiff sent Defendant a written demand to cease and desist from any future use of the Sage designation, to which Defendant never responded. *Id.* ¶¶ 27-28; *id.* Ex. 5.

As a result of the foregoing events, Plaintiff filed the present action alleging infringement of the Sage Mark and unfair competition in violation of the Lanham Act. *Id.* ¶¶ 52-75.

**STANDARD ON A MOTION TO DISMISS**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "While legal conclusions

---

[1] The Amended Complaint often refers to all of Plaintiff's trademarks, *see, e.g.* Am. Compl. ¶ 5, and Defendant's motion addresses the claims "regarding [all of the] marks and applications listed in the Amended Complaint because those allegations are incorporated into Counts I and II of the Amended Complaint by reference," Def.'s Mem. Supp. at 4 n.1. Plaintiff, however, has clarified that "its claims are based solely upon [the Sage Mark]," Pl.'s Mem. Opp'n at 20. Accordingly, the facts and analysis in this Opinion focus exclusively on the Sage Mark, and Defendant's motion to dismiss any claims based upon Plaintiff's other trademarks, Def.'s Mem. Supp. at 14-16, is denied as moot.

can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. Judicial Estoppel Does Not Apply

Defendant first moves to dismiss Plaintiff's claims under the doctrine of judicial estoppel.

"The equitable doctrine of judicial estoppel provides that, '[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *Uzdavines v. Weeks*, 418 F.3d 138, 147 (2d Cir. 2005) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). The doctrine may be invoked based on "sworn statements made to administrative agencies such as the Social Security Administration as well as to courts." *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11-cv-3677 (ARLL), 2013 WL 1209041, at *10 (E.D.N.Y. Mar. 25, 2013); *see also Yeda Research & Dev. Co. v. Imclone Sys. Inc.*, 443 F. Supp. 2d 570, 624 (S.D.N.Y. 2006) (judicial estoppel proper where party made statements that were inconsistent with statements previously made to USPTO).

Judicial estoppel generally applies where (1) "a party's later position is 'clearly

inconsistent' with its earlier position;" (2) "the party's former position has been adopted in some way by the court in the earlier proceeding;" and (3) "the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (quoting *New Hampshire*, 532 U.S. at 751). However, these factors are not "inflexible prerequisites," and other considerations "may inform the doctrine's application in specific factual contexts." *New Hampshire*, 532 U.S. at 751. The Second Circuit has "further limit[ed] judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *DeRosa*, 595 F.3d at 103 (internal quotation marks and citation omitted). "In considering whether to apply this doctrine, the Court views the inconsistent statements in the context in which they are made . . . and if the statements can be reconciled there is no occasion to apply an estoppel." *Carson Optical, Inc.*, 2013 WL 1209041 at *10 (internal quotation marks and citations omitted); *see Rodal v. Anesthesia Grp. of Onondaga*, 369 F.3d 113, 119 (2d Cir. 2004) ("[A] court must carefully consider the contexts in which apparently contradictory statements are made to determine if there is, in fact, direct and irreconcilable contradiction.").

Defendant argues that judicial estoppel applies here because Plaintiff's position regarding likelihood of confusion contradicts an argument it made to the USPTO as part of its Simply Sage and Est. 2016 Simply Sage Lutherville trademark applications. Def.'s Mem. Supp. at 9-10. Specifically, Defendant notes that (1) Plaintiff argued to the USPTO that the probability of confusing either of these marks with other food-related marks containing the term "Sage" was low because "consumers are [likely] used to encountering various SAGE and SAGE-formative marks for food-related goods and services and differentiating between these marks on the basis of minor differences in appearance, sound, connotation, and commercial impression;" and (2) the USPTO

10

adopted Plaintiff's position by removing its earlier findings that these two trademarks would likely cause consumer confusion and permitting the applications to proceed to publication. Def.'s Mem. Supp. at 9-10; *id.* Ex. A. Thus, Defendant contends that Plaintiff should be judicially estopped from arguing a likelihood of confusion in the present action, in which case both of Plaintiff's claims would necessarily fail. *See infra* p. 14 ("[T]o prevail under either statute, Plaintiff must demonstrate that (1) it has a valid mark meriting protection, and (2) Defendant's use of a similar mark is likely to cause consumer confusion[.]").

In this context, the Court declines to apply the doctrine of judicial estoppel because, when reviewing the relevant USPTO submissions in their entirety, it is not clear that Plaintiff's current position is inconsistent with its prior one.

First, Plaintiff's representations to the USPTO were made in connection with its Simply Sage and Est. 2016 Simply Sage Lutherville trademark applications, not the SAGE Mark application. *See In Re Application of SAGE Dining Services, Inc.*, Serial No. 86914946, Response to Office Action (Feb. 22, 2016); *In Re Application of SAGE Dining Services, Inc.*, Serial No. 86931599, Response to Office Action (Mar. 7, 2016). Second, Plaintiff did not make those representations with respect to Defendant's ASH Mark, or even all SAGE-related marks generally. Instead, the position was taken in an effort to distinguish Plaintiff's marks from two third-party trademarks that the USPTO had specifically identified as problematic. *Id.*

Indeed, that the USPTO proceedings involved different marks than the instant action matters when determining whether Plaintiff's two positions can be "reconciled." *Carson Optical, Inc.*, 2013 WL 1209041, at *10. For example, Plaintiff argued to the USPTO that "Simply Sage," used in connection with prepared food and frozen prepared food, was sufficiently distinct from

"Sage" used in connection with "fresh apples and pears" or "liquers." *In Re Application of SAGE Dining Services, Inc.*, Serial No. 86914946, Response to Office Action (Feb. 22, 2016) at 4; *see also In Re Application of SAGE Dining Services, Inc.*, Serial No. 86931599, Response to Office Action (Mar. 7, 2016) at 4 (making a similar argument for the Est. 2016 Simply Sage Lutherville trademark). Plaintiff also emphasized the significance of differences in trade channels and consumers, explaining that its services would be exclusively offered "to the public and private businesses and institutions . . . such as private schools and small private colleges and seminaries," whereas the two registrations cited by the USPTO distributed their SAGE-branded goods through retailers and local stores. *In Re Application of SAGE Dining Services, Inc.*, Serial No. 86914946, Response to Office Action (Feb. 22, 2016) at 5; *see also In Re Application of SAGE Dining Services, Inc.*, Serial No. 86931599, Response to Office Action (Mar. 7, 2016) at 5. Defendant, by contrast, allegedly provides dining services affiliated with Iona College, Am. Compl. ¶ 44, thereby overlapping with Plaintiff's services and consumer base, and advertises itself as merely "Sage," *id.* ¶ 35, thereby adopting a name identical to Plaintiff's Sage Mark.

In short, the USPTO submissions reveal that the purportedly contradictory statements were made in the context of an argument tailored to the specific group of marks at issue in those proceedings—a group that includes neither the SAGE Mark nor the ASH Mark. Plaintiff's position before the USPTO that consumers are used to distinguishing various marks involving "sage" based on minor differences in appearance, sound, and commercial impression is therefore not clearly inconsistent with its position here, namely, that Defendant's particular commercial use of the ASH Mark will likely cause confusion with Plaintiff's SAGE Mark. *Cf. GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 303-04 (S.D.N.Y. 2002) (refusing to apply judicial estoppel where plaintiff argued to USPTO that its mark could coexist with one previously registered trademark,

but never argued that its mark could coexist with defendant's mark); *GMA Accessories, Inc. v. Eminent, Inc.*, 07-cv-3219 (LTS), 2008 WL 2344826, at *14 (S.D.N.Y. May 29, 2008) (finding defendant's judicial estoppel argument "somewhat confusing" given that plaintiff's prior positions were "directed to the similarity of [plaintiff's] mark and other marks . . . that [were] not at issue [in the case]").

Accordingly, Plaintiff is not judicially estopped from alleging likelihood of confusion in this case, and Defendant's motion to dismiss the Amended Complaint on that ground is denied.

## II.     Plaintiff Has Stated Claims for Trademark Infringement and Unfair Competition

Defendant next argues that Plaintiff's federal trademark infringement and unfair competition claims should be dismissed under Rule 12(b)(6).

Section 32 of the Lanham Act protects trademark owners against the commercial use of "any reproduction, counterfeit, copy, or colorable imitation of [another's] registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Section 43 similarly prohibits the commercial use by any person of "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a).

Courts apply the same standard to assess claims for trademark infringement and unfair competition under the Lanham Act. *See, e.g.*, *Ritani, LLC v. Aghjayan*, 800 F. Supp. 2d 425, 444 (S.D.N.Y. 2012); *Technomarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 487 (S.D.N.Y. 2012); *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014). Specifically, to prevail under either statute, Plaintiff must demonstrate that (1) it has a valid mark meriting protection, and (2) Defendant's use of a similar mark is likely to cause consumer confusion. *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 216-17 (2d Cir. 2012) (citation and internal quotation marks omitted); *see also 1-800 Contacts, Inc. v WhenU.com, Inc.*, 414 F.3d 400, 406–07 (2d Cir. 2005) (internal quotation marks omitted).

With respect to the first element, "[t]o be valid and protectable, a mark must be capable of distinguishing the products it marks from those of others." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,* 192 F.3d 337, 344 (2d Cir.1999). Thus, a mark's level of protection is determined by looking at its distinctiveness: while "[g]eneric marks are not protectable," "[f]anciful, arbitrary, and suggestive marks are deemed inherently distinctive" and are therefore "automatically protected." *Id.* And even where a mark is not "inherently distinctive," it may be distinctive insofar as it has acquired a "secondary meaning" in the minds of consumers. *Star Indus., Inc. v. Bacardi & Co. Ltd.,* 412 F.3d 373, 381 (2d Cir. 2005) (citation and internal quotation marks omitted). Furthermore, "[a] certificate of registration with the [USPTO] is *prima facie* evidence that the mark is registered and valid (*i.e.*, protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *Lane Capital Mgmt., Inc.*, 192 F.3d at 345; *see also Lois Sportswear, U.S.A. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986) ("[R]egistered trademarks are presumed to be distinctive and should be afforded the utmost protection.").

As for the second element, in order to assess likelihood of confusion, courts in this Circuit employ the eight-factor balancing test set forth in *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). *Ritani, LLC*, 880 F. Supp. 2d at 446. Those factors are: (1) the strength of the plaintiff's mark; (2) the similarity of the marks; (3) the competitive proximity of the products in the marketplace; (4) the likelihood that the senior user will "bridge the gap" by moving into the junior user's market; (5) evidence of actual confusion; (6) the junior user's bad faith in adopting the mark; (7) the respective quality of the products; and (8) the sophistication of the consumers in the relevant market. *Juicy Couture v. Bella Int'l Ltd.*, 930 F. Supp 2d 489, 498 (S.D.N.Y. 2013) (citing *Polaroid*, 287 F.2d at 495). However, "[l]ikelihood of confusion is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss." *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006) (citations omitted); *see also, e.g.*, *Ritani, LLC.,* 880 F. Supp. 2d at 446 (collecting cases and noting that "courts have refused to dismiss infringement claims where a likelihood of confusion analysis would be necessary on the pleadings") (citations omitted); *Van Praagh*, 993 F. Supp. 2d at 303-04 (declining at the motion to dismiss stage to "inquire into whether the Complaint's factual allegations are sufficient with respect to the likelihood of confusion"). As such, it is "well settled" that a plaintiff need not address every *Polaroid* factor in order to adequately plead likelihood of confusion. *World Trade Ctrs. Ass'n, Inc. v. Port Auth. of N.Y.*, 15-cv-7411 (LTS), 2016 WL 8292208, at *2 (S.D.N.Y. Dec. 15, 2016).

According to Defendant, Plaintiff has failed to demonstrate that its trademark is distinct with respect to the use of "sage" in food-related industries, *i.e.*, that the Sage Mark merits protection. *See* Def.'s Mem. Supp. at 11-15. In support of this assertion, Defendant states that, "[a]s public records demonstrate, literally hundreds of third-party trademark registrations contain 'Sage' or a

variation of that term for commercial use in the same classes of goods and services at issue in the Amended Complaint, and common sense suggests that many more likely exist in the marketplace beyond that." Def.'s Mem. Supp. at 17. Defendant likewise cites to Plaintiff's submission to the USPTO as part of its "SIMPLY SAGE" trademark application, which included roughly 25 online examples of "Sage" being used to promote food-related goods and services. *Id.* Exs. A & B.[2]

The Court finds Defendant's argument on this point unavailing. Where, as here, a plaintiff has provided the certificate of registration as *prima facie* evidence that it owns a protectable mark, the defendant "bear[s] the burden of overcoming the presumption that the mark is not generic." *Reese Pub. Co. v. Hampton Int'l Commc'ns, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980). Moreover, a trademark is only generic where "the *principal* significance of the word [is] its indication of the nature or class of an article, rather than an indication of its origin." *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 144 (2d Cir. 1997) (citation and internal quotation marks omitted). Thus, the classification of a mark is a "factual question" that "turns on how the purchasing public views the mark." *Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 215 (2d Cir. 2003). Making this determination requires evidence such as "consumer surveys, dictionary definitions, newspapers and other publications, generic use by competitors, testimony of lexicographers, generic use of the term by [the] mark's owners, and use of the term by third parties in trademark registrations." *Frito-Lay, Inc. v. Bachman Co.*, 704 F. Supp. 432, 440 (S.D.N.Y. 1989). Here, the evidence submitted by Defendant is insufficient to establish that the term "sage" primarily signifies food-related goods

---

[2] Defendant also argues that the Amended Complaint is deficient in that it "do[es] not address the distinctiveness of Plaintiff's mark given the evidence adduced by it in its [USPTO] proceedings, that the use of the term "Sage" in the context of food and dining services is indistinct and thus does not deserve protection irrespective of any actual indication of confusion." Def. Mem. Supp. at 12. To the extent this refers to Plaintiff's previous arguments to the USPTO, those statements do not mandate dismissal under Rule 12(b)(6) for the same reasons discussed with respect to judicial estoppel, *see supra* Part I.

and services.³ Accordingly, Plaintiff has adequately alleged that it owns a valid, legally protectable mark.

Plaintiff has also met its burden of pleading likelihood of confusion. Notably, "[w]hen names are the same, courts have found that the similarity of the marks is likely to cause confusion." *Ritani, LLC*, 880 F. Supp. 2d at 446 (citing *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 479-80 (2d Cir. 1996)). In this case, the names, as allegedly used, are identical. *See, e.g.*, Am. Compl. ¶¶ 33-41. Moreover, Plaintiff has pleaded that Defendant's café is competing with Plaintiff in a manner that suggests a plausible threat of confusion. For instance, Plaintiff alleges that Defendant features Plaintiff's trademarked term on its restaurant's website, *id.* ¶¶ 35; operates the restaurant in a residence hall owned by Iona College, *id.* ¶ 44; and accepts Iona College meal plans as payment, *id.* ¶ 48. This affiliation with, and advertising directed at, Plaintiff's customer base—a college and its faculty or students—increases the likelihood of confusion. *See Ritani, LLC*, 880 F. Supp. 2d at 447 (finding likelihood of confusion where plaintiff alleged, among other things, that defendant's marketing materials were "actively distributed in mass to [plaintiff's] customer[s]"). In fact, according to Plaintiff, actual confusion has already occurred. *See* Am. Compl. ¶ 49 (alleging that "individuals [have contacted] Plaintiff to 'congratulate' it on obtaining a contract with Iona College.").

For these reasons, Plaintiff has asserted plausible claims that survive a motion to dismiss under

---

³ Indeed, this case is distinguishable from *Universal Church, Inc. v. Universal Life Church/ULC Monastery*, 14-cv-5213 (NRB), 2017 WL 3669625 (S.D.N.Y. Aug. 8, 2017), the principal case upon which Defendant relies. For one, that decision arose from a motion for summary judgment rather than a motion to dismiss. *See FragranceNet.com, Inc. v. Les Parfums, Inc.*, 672 F. Supp. 2d 328, 333 (E.D.N.Y. 2009) (noting that whether a registered trademark is generic is a "fact-specific inquiry that is inappropriate for determination on a motion to dismiss"). Moreover, the defendants in *Universal Church* supplied substantial evidence that "universal" was generic as applied to churches, including, among other things, a dictionary definition and searches identifying almost 100 churches around the country using "universal church" in their names. 2017 WL 3669625, at *7-8. This evidence goes beyond that presented by Defendant in the instant case.

Rule 12(b)(6).

## CONCLUSION

In light of the above, Defendant's motion to dismiss the Amended Complaint is DENIED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 20. Defendants are directed to file an answer to the Complaint on or before May 28, 2019. The parties are directed to complete the attached case management plan and submit it to the Court on or by June 14, 2019. The parties are directed to confer, complete, and submit to the Court the attached case management plan before the initial pre-trial conference. This constitutes the Court's Opinion and Order.

Dated: May 10, 2019
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT  Rev. Jan. 2012
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

                                        Plaintiff(s),       **CIVIL CASE DISCOVERY PLAN**
                                                              **AND SCHEDULING ORDER**
   - against -

                                          Defendant(s).       _____ CV _____ (NSR)

------------------------------------------------------------x

    This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

    a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b. Depositions shall proceed concurrently.

    c. Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated: White Plains, New York
 _____

Nelson S. Román, U.S. District Judge